IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 3:23-cv-00597-MR
BANKRUPTCY CASE NO. 19-30646
BANKRUPTCY CASE NO. 19-03067

| | |
|---|---|
| IN RE: ) | |
| ) | |
| JAFFER SAIT MOHAMMED, ) | |
| ) | |
| Debtor. ) | **MEMORANDUM OF** |
| _____ ) | **DECISION AND ORDER** |
| ) | |
| SHAF INTERNATIONAL, INC., ) | |
| ) | |
| Appellant, ) | |
| ) | |
| vs. ) | |
| ) | |
| JAFFER SAIT MOHAMMED, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the appeal by Shaf International, Inc. of the Bankruptcy Court's Order Granting Defendant's Amended Motion for Summary Judgment [BK 19-30646; CV 3:23-cv-00597-MR, Doc. 1-1].[1]

---

[1] Citations to the record contain the referenced document number preceded by either "CV 3:23-cv-00597-MR," denoting that the document is listed on the docket in civil case number 3:23-cv-00597-MR, "BK 19-30646," denoting that the document is listed on the docket in bankruptcy case number 19-30646, a Chapter 7 bankruptcy case, or "BK 19-03067," denoting that the document is listed on the docket in bankruptcy case number 19-03067, an adversary proceeding related to bankruptcy case number 19-30646.

The Plaintiff/Appellant Shaf International, Inc. ("Shaf" or the "Appellant"), a creditor of Jafrum International, Inc. ("Jafrum" or the "Company"), brought this adversary proceeding seeking a non-dischargeable judgment against the president and owner of Jafrum, the Debtor/Appellee Jaffer Sait Mohammed (the "Debtor"), for the Debtor's alleged breach of fiduciary duty to Shaf as a creditor of the Company. The Bankruptcy Court entered summary judgment in favor of the Debtor, concluding that Shaf was without standing to assert a claim for breach of fiduciary duty against the Debtor. Shaf now appeals, arguing that the Bankruptcy Court erred in concluding that Shaf's injury was common to all of Jafrum's creditors and that Shaf lacked standing to assert its claims. For the following reasons, this Court affirms.

I.

Section 158(a)(1) of Title 28 gives federal district courts jurisdiction to hear appeals "from final judgments, orders, and decrees" entered by bankruptcy courts. 28 U.S.C. § 158(a)(1). "The Bankruptcy Court's conclusions of law are reviewed *de novo* and its findings of fact are reviewed for clear error." Campbell v. Hanover Ins. Co., 457 B.R. 452, 456 (W.D.N.C. 2011) (citing In re Kielisch, 258 F.3d 315, 319 (4th Cir. 2001)). "Rule 56 of the Federal Rules of Civil Procedure applies to summary judgment in

bankruptcy proceedings." Id. (citing Fed. R. Bankr. P. 7056). Under Rule 56, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

II.

Viewing the forecast of evidence in the light most favorable to Shaf as the non-moving party, the following is a recitation of the relevant facts.

The Debtor owned Jafrum, a North Carolina corporation, which sold motorcycle gear and apparel. [See CV 3:23-cv-00597-MR, Doc. 1-1 at 3; BK 19-30646, Doc. 1 at 47; BK 19-03067, Doc. 28 at ¶ 41]. The Debtor was also Jafrum's president. [CV 3:23-cv-00597-MR, Doc. 1-1 at 3]. Shaf, a wholesale supplier of motorcycle gear and apparel, sold inventory to Jafrum on account, and this debt was personally guaranteed by the Debtor. [Id.]. When Jafrum failed to timely pay, Shaf brought a civil action against the Company and the Debtor in New Jersey state court seeking $661,239.40. [Id. at 3–4].

On July 25, 2018, while the New Jersey litigation was pending, the Debtor, acting as the Company's president, agreed to sell the Company's inventory (the "Sale") to DaytonaBikersWear, LLC. [CV 3:23-cv-00597-MR, Doc. 1-1 at 4; BK 19-03067, Doc. 28 at ¶ 21]. DaytonaBikersWear is a

Florida limited liability company and an affiliate of Vance Leathers, Inc., a Florida corporation. [CV 3:23-cv-00597-MR, Doc. 1-1 at 4; BK 19-03067, Doc. 28 at ¶ 21]. At the time of the Sale, the Company was indebted to Vance Leathers in the amount of $311,000.00. [CV 3:23-cv-00597-MR, Doc. 1-1 at 4]. Under the terms of the Sale, the Company's debt to Vance Leathers was satisfied, and in addition, the Company was paid $125,000. [Id.]. With the $125,000.00, the Company paid "PayPal" $82,476.09, paid its attorney $6,000.00, and used the remaining $36,523.91 "to wind up and shut down its business operations." [Id.]. At the time of the Sale, the Company "was indebted to at least eighteen creditors, including Vance Leathers Inc. and [Shaf], for a total of at least $1,542,845.00."[2] [Id.].

Approximately one month after the Sale, on August 31, 2018, Shaf obtained a judgment (the "New Jersey Judgment") against the Company and the Debtor, jointly and severally, for $661,239.40, plus interest. [BK 19-03067, Doc. 28-2].

Shortly thereafter, the Company was administratively dissolved by the North Carolina Secretary of State for not filing annual reports. [BK 19-03067, Doc. 41 at ¶ 41].

---

[2] With the payment of Vance, PayPal and the attorney, upon the winding up of the Company its debts would presumably have been reduced to $1,143,369 or less, including its debt to Shaf.

On May 14, 2019, the Debtor voluntarily filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Western District of North Carolina. [CV 3:23-cv-00597-MR, Doc. 1-1 at 2]. The Plaintiff's claim on the Debtor's personal guaranty was identified therein as an unsecured claim. On October 21, 2019, the trustee of the Debtor's bankruptcy estate concluded "that there is no property available for distribution from the estate over and above that exempted by law," and that the Debtor's bankruptcy estate "has been fully administered." Accordingly, the trustee requested to "be discharged from any further duties as trustee."[3] [BK 19-30646: October 21, 2019 Text Order].

On November 15, 2019, Shaf initiated the present Adversary Proceeding against the Debtor. [BK 19-03067, Doc. 1]. On August 17, 2020, Shaf filed a Second Amended Complaint in the Adversary Proceeding, wherein Shaf alleges that the Debtor, by agreeing to the Sale as the Company's president, "violate[d Shaf]'s legal right to payment pursuant to the Judgment in the New Jersey Lawsuit." [BK 19-03067, Doc. 28 at ¶ 33]. Accordingly, Shaf asserts claims against the Debtor for "constructive fraud while acting in a fiduciary capacity" and for "willful and malicious injury." [Id.

---

[3]The trustee of the Debtor's bankruptcy estate made substantially identical statements on January 25, 2021 and March 13, 2023.

at ¶¶ 34–57]. For relief, Shaf seeks "compensatory and punitive damages," a declaration "that the debt of the De[btor] to [Shaf] constitutes a nondischargeable debt," and attorneys' fees and costs. [Id. at 13]. Shaf does not request that the New Jersey Judgment be deemed non-dischargeable. [See id.] Rather, Shaf seeks a new and separate judgment against the Debtor, and thereupon seeks to have this separate judgment deemed non-dischargeable.[4]

On August 16, 2023, in the Adversary Proceeding, the Bankruptcy Court entered its Order granting the Debtor summary judgment. [BK 19-03067, Doc. 101 at 7–8]. The Bankruptcy Court dismissed Shaf's fiduciary fraud claim, reasoning that "only a receiver on behalf of all creditors would have standing to assert the claim." [Id. at 7].

On September 20, 2023, Shaf filed a Notice of Appeal and an Amended Notice of Appeal. [CV 3:23-cv-00597-MR, Docs. 1–2]. On November 20, 2023, Shaf filed a brief in support of its appeal. [CV 3:23-cv-00597-MR, Doc. 4]. On December 20, 2023, the Debtor filed a brief in

---

[4] As stated by the Bankruptcy Court: "In these two causes of action [Shaf] asserts that it suffered damages and that it should recover such damages from the De[btor] and that its damages are non-dischargeable." [CV 3:23-cv-00597-MR, Doc. 1-1 at 5]. Shaf has not objected to the Bankruptcy Court's statement of its claims.

6
Case 3:23-cv-00597-MR    Document 6    Filed 09/22/25    Page 6 of 15

response. [CV 3:23-cv-00597-MR, Doc. 5]. This matter is now ripe for review.

III.

On appeal, the only issue presented by Shaf is whether the Bankruptcy Court erred "by concluding that [Shaf] is without standing to assert the claim for breach of fiduciary duty against the [Debtor]." [CV 3:23-cv-00597-MR, Doc. 4 at 6]. Accordingly, the Court will address only that issue. See In re Dunlap, No. 3:16-CV-00037-RJC, 2017 WL 374915, at *3 (W.D.N.C. Jan. 25, 2017) ("[T]he issues for appeal Appellant raised in its designation are not addressed in Appellant's brief and therefore are waived."), aff'd, 697 F. App'x 176 (4th Cir. 2017).

In order to determine whether Shaf has standing, the Court first must discern what claim or claims the Appellant is prosecuting herein. Shaf already holds a judgment against the Debtor personally for his guaranty of Jafrum's debt. That debt, however, is discharged in this bankruptcy, as it is a mere action on a personal guaranty. Shaf instead is asserting new claims against the Debtor, in the form of a claim for "constructive fraud while acting in a fiduciary capacity" and for "willful and malicious injury." [BK 19-3067, Doc. 28 at ¶¶ 34-57]. These claims are premised on Shaf's allegations that the Debtor, as a director/officer of Jafrum, transferred assets to discharge

the Company's debt to one creditor to the detriment and exclusion of all others. Notably, Shaf does not bring a claim asserting that this was a preference payment, likely because the payment occurred outside the preference period. Shaf also does not bring a claim asserting a fraudulent transfer pursuant to the North Carolina Uniform Voidable Transactions Act (the "NCUVTA"), N.C. Gen. Stat. § 39-23.4.[5] Rather, Shaf's claims are premised solely on a breach of the fiduciary duty that the Debtor has as corporate director/officer of an insolvent corporation to the corporation's unsecured creditors.

"Under North Carolina law, directors of a corporation generally owe a fiduciary duty *to the corporation*, and whether it is alleged that directors have breached that duty, the action is properly maintained *by the corporation*, rather than any individual creditor or stockholder."[6] Keener Lumber Co. v. Perry, 149 N.C. App. 19, 26, 560 S.E.2d 817, 822 (2002) (emphasis in original) (citing Underwood v. Stafford, 270 N.C. 700, 703, 155 S.E.2d 211,

---

[5] The forecast of evidence presented shows that the Company received $436,000 in consideration from the Sale. While there is a dispute among the parties' respective experts as to the value and method of valuation of the assets sold, at a minimum, the Debtor's expert opines that the Company's assets had a fair market value of $655,146.13 and an Orderly Liquidation Value of $395,844.93. [See BK 19-3067, Doc. 93-2: Report of W. Lilly at 3].

[6] This principle applies equally to corporate officers. See e.g., Raymond James Cap. Partners, L.P. v. Hayes, 248 N.C. App. 574, 580, 789 S.E.2d 695, 701 (2016) (citing Keener and stating the rule in terms of "corporate officers").

8

Case 3:23-cv-00597-MR   Document 6   Filed 09/22/25   Page 8 of 15

213 (1967)). If, however, "a cause of action is 'founded on injuries peculiar or personal to [an individual creditor or stockholder], so that any recovery would not pass to the corporation and indirectly to other creditors,' the cause of action belongs to, and is properly maintained by, that particular creditor or stockholder." Keener Lumber, 149 N.C. App. at 26, 560 S.E.2d at 822 (alterations in original) (quoting Underwood, 270 N.C. at 703, 155 S.E.2d at 213).

A corporate director only owes a fiduciary duty directly to creditors "under circumstances amounting to a 'winding-up' or dissolution of the corporation." Keener Lumber, 149 N.C. App. at 31, 560 S.E.2d at 825 (quoting Whitley v. Carolina Clinic, Inc., 118 N.C. App. 523, 528, 455 S.E.2d 896, 900 (1995)). Under such circumstances:

> a claim brought by a creditor against a director of a corporation, alleging that the director has committed constructive fraud by breaching his fiduciary duty owed directly to the creditor, is a claim founded on injuries peculiar or personal to the individual creditor, and, therefore, is a claim that belongs to the creditor and not the corporation.

Keener Lumber, 149 N.C. App. at 26–27, 560 S.E.2d at 823 (citing Lillian Knitting Mills Co. v. Earle, 233 N.C. 74, 62 S.E.2d 492 (1950)). However, where there are multiple creditors who "share an injury based on a common act, only a receiver or trustee has standing to assert the creditors' collective

claim against the directors of the corporation." In re Bostic Constr., Inc., 435 B.R. 46, 61 (Bankr. M.D.N.C. 2010); Alvarez v. Ward, No. 1:11cv03, 2012 WL 113567, at *3 (W.D.N.C. Jan. 13, 2012) (quoting Bostic with approval); see also Koch Ref. v. Farmers Union Cent. Exch., Inc., 831 F.2d 1339, 1348 (7th Cir. 1987) (noting that a claim is personal to a creditor only "if the claimant himself is harmed and no other claimant or creditor has an interest in the cause").

Thus, whether Shaf has standing to assert claims based on a breach of fiduciary by the Debtor depends on whether these claims are founded on injuries that are personal to Shaf *alone* or whether they are based on injuries "based on a common act" and suffered by *all* of Jamfur's creditors.

Here, Shaf appears to claim that the Debtor breached a fiduciary duty by selling the Company's assets for $436,000 and using net proceeds to pay only one creditor (Vance Leathers) to the exclusion of the Company's 17 other creditors.[7] However, any fiduciary duty the Debtor owed to the creditors arises only in the event of "circumstances amounting to a winding up or dissolution of the corporation." In re Bostic Constr., Inc., 435 B.R. at

---

[7] The forecast of evidence shows that the Company was indebted to Vance Leathers in the amount of $311,000 and to Shaf in the amount of $661,000. The amount owed to each of the other creditors is unknown. In any event, however, the Debtor's breach, if any, did not cause Shaf a $661,000 loss.

62. "If the directors and officers continue to operate an insolvent corporation only to recover the amounts owed to them, to the detriment of the corporation's other creditors, North Carolina courts equate that to a winding up or dissolution and find that the directors and officers owe a fiduciary duty to creditors." Id. (citation and footnote omitted). Once that fiduciary duty arises, the directors and officers must treat all creditors of the same class pro rata. See 11 U.S.C. § 547 (allowing trustee to avoid preference payments made within 90 days before the filing of a bankruptcy petition); Advo-System, Inc. v. Maxway Corp., 37 F.3d 1044, 1047 (4th Cir. 1994) (noting that the trustee's avoidance power in § 547(b) "promotes the prime bankruptcy policy of equality of distribution among creditors by ensuring that all creditors of the same class will receive the same pro rata share of the debtor's estate") (citation and internal quotation marks omitted). Thus, the making of preference payments in the course of winding up would constitute a breach of fiduciary duty. The recovery of such preference payments, however, is a claim of the corporation itself (if the corporation is in bankruptcy), not of the creditors. See id. § 547.

Shaf has two problems with its claims. First, Shaf's claims are in the nature of an objection to a preference payment, a claim which is derivative of the Company per § 547. The Company, however, has not filed for

bankruptcy; only the Debtor has. Second, as Shaf's claims are preference claims, Shaf is similarly situated (proportionally) to the Company's other creditors. Shaf has suffered an injury that is *not* unique to itself, and thus any claim brought seeking redress for such injury must be brought derivatively through the Company, either through an involuntary bankruptcy or a derivative civil suit.

Shaf attempts to sidestep these problems by asserting that its claims are unique in two respects: first, that it was reduced to a judgment; and second, that it is the largest of the creditors' claims. Both of these arguments, however, fail. First, Shaf's judgment is unsecured and thus is, at most, an unsecured claim. As such, it does not stand unique among the claims of the Company's other creditors. Rather, it is of precisely the same class as the other unsecured creditors. Second, even if Shaf had presented a forecast of evidence to show what was owed to each of the Company's other creditors (which it has not), Shaf points to no authority for the proposition that the largest creditor is somehow "unique" vis-à-vis other creditors with unsecured claims. Shaf argues that the Debtor breached his fiduciary duties by not distributing the sale proceeds pro rata. Yet Shaf seeks to recover the sale proceeds - a greater than pro rata share - for itself based

on the fact that it is the largest creditor. These positions are entirely inconsistent.

Shaf makes one last effort at differentiating its claims, but in doing so, it works to its own disadvantage. Shaf argues that shortly after the transfer of the Company's assets to DaytonaBikersWear, in or around October 2018, the Debtor began working for a company called Commerzilla, LLC, a marketing agency which is owned by the Debtor's wife. Upon taking the job with Commerzilla, the Debtor mostly performed marketing on behalf of one company: DaytonaBikersWear. From 2018-2022, Commerzilla received approximately $382,000 for work it performed for DaytonaBikersWear. Shaf contends that these actions constituted a breach of fiduciary duty in that not only was the transfer of assets to DaytonaBikersWear a preference, but that the Debtor did this for the purpose of bringing business to his wife's company Commerzilla LLC. [Doc. 4 at 11-12].

Shaf appears to allege that this was some sort of self-dealing on the part of the Debtor, presumably on the theory that he received a benefit through Commerzilla, that originated from the purchaser, DaytonaBikersWare. In other words, Shaf claims that the Debtor pocketed some of the proceeds of the sale that should have gone to the Company for the benefit of the creditors. This, however, would be a claim of the Company

against the Debtor for misdirecting Company funds. Moreover, to the extent that it is a breach of any fiduciary duty to the creditors, it is a breach as to ALL of them, pro rata. As such, Shaf has no standing.[8]

The fact that the Company never filed for bankruptcy is irrelevant. The salient question is standing. If only the Company had standing to assert such claims, then it was a necessary party to the action. Underwood, 270 N.C. at 703-04, 155 S.E.2d at 213 (1967). Shaf only has standing if it "itself [was] harmed and no other creditor has an interest in the claim." In re Bostic Constr., 435 B.R. at 63. As Shaf is not alone in its interest in the claim, it lacks standing to bring fiduciary fraud claims against the Debtor in this bankruptcy proceeding. Accordingly, the Bankruptcy Court correctly concluded that the Debtor is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Therefore, the Court will affirm the Bankruptcy Court's Order Granting Defendant's Amended Motion for Summary Judgment.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Bankruptcy Court's Order Granting Defendant's Amended Motion for Summary Judgment [BK 19-03067, Doc. 101] is hereby **AFFIRMED**.

---

[8] On summary judgment it was incumbent upon the Plaintiff as the non-moving party to present a forecast of evidence, and not mere allegations and conjecture. This alternate theory also fails for the absence of such evidentiary forecast.

**IT IS SO ORDERED**.

Signed: September 22, 2025

Martin Reidinger
Chief United States District Judge